Filed 3/6/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LARISA BERGERON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ROBERT BOYD,<br><br>        Defendant and Respondent. | A137802<br><br>(Alameda County<br>Super. Ct. No. RG12615764)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 4, 2014, be modified as follows:

On page 3, line 5 of footnote 2, the words "legally cognizable" are to be inserted between the words "No" and "request" so that the sentence reads:

No legally cognizable request has been made in this court to take judicial notice of all "pleadings and papers" comprising the trial court file in the underlying family law action, and no copies of those documents, except as noted above, have been submitted by the parties.

On page 3, line 9 of footnote 2, after the sentence ending "have been submitted by the parties," add the following sentence:

(See Cal. Rules of Court, rule 8.128 [use of superior court file in lieu of clerk's transcript].)

1

There is no change in the judgment.  Appellant's petition for rehearing is denied.



DATED:  _____    _____
                                                                          RUVOLO, P. J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LARISA BERGERON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ROBERT BOYD,<br><br>        Defendant and Respondent. | A137802<br><br>(Alameda County<br>Super. Ct. No. RG12615764) |

## I.

## INTRODUCTION

Embroiled in protracted, acrimonious child custody proceedings with her former spouse, Larisa Bergeron (appellant) sued psychologist and family court child custody evaluator Robert Boyd, Ph.D. (respondent) for breach of contract, negligence, and intentional infliction of emotional distress. The acts complained of included the issuance of an interim custody order that restricted appellant's access to her children.

Respondent demurred to the complaint, asserting that the conduct complained of was protected by the common law privilege for quasi-judicial acts and by the litigation privilege. (Civ. Code, § 47.) Both in the trial court and on appeal, appellant contends respondent was without jurisdiction to issue such an order, and thus, the act of doing so

was not privileged.[1]  The trial court agreed that the quasi-judicial privilege applied, and sustained the demurrer without leave to amend on that basis.  We affirm.

## II.

## STANDARD OF REVIEW

Our standard of review of a trial court's ruling sustaining a demurrer is governed by well settled principles.  " 'A demurrer tests the sufficiency of a complaint as a matter of law.' [Citation.]" (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1379.) Accordingly, we review the trial court's ruling de novo, exercising our independent judgment.  (*Ibid.*; *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)  " 'The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.' [Citation.]" (*Hale v. Sharp Healthcare*, *supra*, at p. 1379.)

As we stated recently in *La Serena Properties, LLC v. Weisbach* (2010) 186 Cal.App.4th 893 (*Weisbach*), "[w]hen considering an appeal from a judgment entered after the trial court sustained a demurrer without leave to amend, we 'accept as true all well-pleaded facts in the complaint and give a reasonable construction to the complaint as a whole.' (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 140, fn. 1 . . . , citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 . . . .)  In addition, we may consider matters that are properly the subject of judicial notice, and were considered by the trial court.  (*Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1543 . . . .)" (*Weisbach*, *supra*, at p. 897.)

---

[1]  Appellant also alleged in the trial court that respondent was liable for authoring a custody evaluation report which was biased and incompetent.  While those allegations were similarly dismissed when the court sustained respondent's demurrer, appellant does not challenge that determination on appeal.  Therefore, we limit our discussion of the record and legal analysis to the issue raised on appeal in connection with respondent's interim child custody order.

## III.

## FACTUAL AND PROCEDURAL BACKGROUND

Our factual summary is derived from appellant's complaint, and the matters judicially noticed, specifically, certain pleadings and the transcript from the January 25, 2011 hearing (January 25 hearing) in the underlying Alameda County Superior Court family law action captioned *Bergeron v. Bergeron* (2010, No. VF10518920). (*Holland v. Morse Diesel Internat., Inc*. (2001) 86 Cal.App.4th 1443, 1447.)[2]

Appellant's original complaint against respondent was filed on February 3, 2012. It alleged causes of action for breach of contract, negligence, and intentional infliction of emotional distress. Respondent filed a demurrer to that complaint on the grounds that the acts complained of were privileged both under the quasi-judicial and litigation privileges. The demurrer was sustained on both grounds. However, the trial court granted appellant leave to amend her complaint.

A first amended complaint (FAC) was filed on August 6, 2012, again stating the same three causes of action against respondent. More specifically, the FAC alleged that appellant and her estranged spouse were engaged in a "contentious" marital dissolution and custody dispute which involved their two young children. As part of those proceedings, the family law court ordered the parties to retain a child custody evaluator who could conduct an evaluation relating to the issue of custody, and make recommendations to the court. As a result, respondent was hired to perform unbiased testing of the parties, toxicology tests when necessary, and to produce a report. This custody evaluation was to be performed "under the guise of being appointed a Court

---

[2] We grant the parties' separate requests for judicial notice of *some* of the same materials. These materials include the hearing transcript from the January 25 hearing, the request for judicial notice itself made in the trial court relating to "pleadings and papers and other records" in the underlying family law case (*Bergeron v. Bergeron* (Super. Ct. Alameda County, *supra*, No. VF10518920)), and the February 14, 2012 statement of decision issued in that case. No request has been made in this court to take judicial notice of all "pleadings and papers" comprising the trial court file in the underlying family law action, and no copies of those documents, except as noted above, have been submitted by the parties.

retained expert pursuant to California Evidence Code section 730." Respondent was paid $4,000 by each side for these services. However, instead of preparing a professional, unbiased evaluation, the FAC alleged that respondent failed in six enumerated ways to perform as promised, including his failure "to be appointed as the Court's expert under Evidence Code section 730 . . . ."

In addition to the alleged misconduct concerning the preparation of the custody evaluation, the FAC also alleged that respondent "usurp[ed] the actual lawful authority of the Court by issuing what he called 'interim child custody orders.' " Because of this misfeasance, appellant alleged that she was deprived of contact with her minor children for almost seven months, or until the court "reversed" the respondent's orders.

As a result of respondent's alleged misconduct, the FAC alleged appellant suffered extreme emotional distress; incurred costs in hiring a visitation supervisor during the six months she was deprived of unsupervised visitation with her children; and suffered monetary damages consisting of legal fees and expenses, and lost wages.

Respondent filed a demurrer to the FAC asserting again the quasi-judicial and litigation privileges as absolute defenses to the claims. At respondent's request, the trial court took judicial notice of the pleadings in the underlying family law case. One such pleading in the family law matter was a minute order following the January 25 hearing at which the parties were specifically ordered by the family law judge to comply with any interim orders to be issued by respondent.

The hearing transcript from that session, which was also judicially noticed, reflects a discussion concerning appellant's visitation schedule. Appellant argued that she was effectively being denied visitation with her children because the existing visitation schedule gave her custody between 5:00 a.m. and 5:00 p.m. Monday through Friday, and her new work schedule prevented her from being able to visit her children during the daytime.

In light of appellant's work schedule, the trial judge concluded in the meantime that appellant should have custody on weekends. However, the court made several references to the court-authorized power of respondent to issue further orders modifying

4

the visitation schedule pending a future review by the family law court of the issue. At one point, the court stated this authority more explicitly: " . . . The authority for [respondent] to modify the custody orders remains in effect. If he decides to make interim orders that are at variance with what I'm about to do, he retains that authority. And that means you need to comply with any interim modifications to custody he may communicate, or come back to court and ask that I look at what his interim orders are. All right. So I want to be clear about that. So if he's at the house and it causes him concern this weekend[3] and he says, 'I don't think the children should be there overnight,' then everyone has to understand that you're going to comply with that, pending further court orders."

Nothing in the record indicates that appellant objected to the original appointment of respondent, nor to the apparent authority given to him to issue interim custody orders. Furthermore, at no point during the January 25 hearing did appellant object to respondent's authority to continue issuing interim custody orders modifying custody.

A final custody order was not filed until February 14, 2012. Between January 2011, and the issuance of the order, the court conducted at least eight hearings on the subject of custody.[4] During that 13-month period, appellant made no attempt to set aside any interim custody order by respondent. While the matter originally had been submitted on September 29, 2011, additional testimony and arguments of counsel were subsequently heard, and the matter was not finally submitted until October 19, 2011.

The February 14, 2012 custody order is contained in a 19-page statement of decision. Much of the recitation of the court's findings are not relevant to the sole issue now raised on appeal. The order granted the parties joint legal custody of their two minor

---

[3] Apparently, respondent had plans to visit appellant's home that upcoming weekend as part of his evaluative process.

[4] At appellant's request, we take judicial notice of this order and statement of decision. The family law judge who finally decided the custody issue was not the same judge who issued the order on January 25, 2011. However, it is apparent from the court's final February 14, 2012 statement of decision that both judges participated in proceedings intermittently relating to the custody issue.

children.  In order to avoid potential disagreements about the timing and circumstances of physical custody, the statement of decision detailed how the parties were to divide the time of physical custody, including provisions for custody during school days, overnights, vacations, holidays, and access by telephone.

After briefing relating to respondent's demurrer to the FAC was completed, the court issued a tentative ruling sustaining the demurrer without leave to amend, again on the grounds that the acts complained of were privileged under the quasi-judicial privilege. Appellant filed a written objection to the tentative ruling on December 12, 2012.  While her objection included the statement that if "the Court is incline [*sic*] to grant the demurrer, than [*sic*] I do seek leave of court to amend the pleadings," appellant offered no suggestion as to how she might amend the complaint to state a legally cognizable claim against respondent.

The demurrer to the FAC was sustained in an order dated December 13, 2012, this time without leave to amend.  This timely appeal followed.

### III.

### DISCUSSION

#### A.  The Common Law Privilege for Quasi-Judicial Acts Applies to Immunize Respondent from Appellant's Claims

The principle case authority discussing the evolution of the common law quasi-judicial privilege in California, and one factually similar to the instant case, is *Howard v. Drapkin* (1990) 222 Cal.App.3d 843 (*Howard*).  In *Howard*, the defendant was a psychologist who was sued by a disgruntled parent/family court litigant after performing a child custody evaluation.  After tracing the history and rationale for the common law development of a quasi-judicial privilege, the Court of Appeal concluded that persons performing acts that are judicial in nature are protected by the privilege.  In making this determination, the court emphasized that it is the act performed, not the title of the person performing it, which is determinative: "So also, in determining whether a person is acting in a quasi-judicial fashion, the courts look at 'the nature of the duty performed [to determine] whether it is a judicial act—not the name or classification of the officer who

6

performs it, and many who are properly classified as executive officers are invested with limited judicial powers.' (*Pearson v. Reed* [(1985)] 6 Cal.App.2d [277,] 286-287.)" (*Howard*, *supra*, at p. 853.)

Turning to the function of the family law custody evaluator in that case, the *Howard* court rejected the plaintiff's attempt to analogize the action to one for professional malpractice: "In contrast, the psychologist who is mediating a child custody dispute, whether by court appointment or not, is not an advocate for either parent, even if paid by them. [Citation.] The job of third parties such as mediators, conciliators and evaluators involves impartiality and neutrality, as does that of a judge, commissioner or referee; hence, there should be entitlement to the same immunity given others who function as neutrals in an attempt to resolve disputes. In a sense, those persons are similar to a judge who is handling a voluntary or mandatory settlement conference, no matter whether they are (1) making binding decisions (such as referees acting pursuant to Code Civ. Proc., § 638, subd. (1), and arbitrators), (2) making recommendations to the court (such as referees acting under Code Civ. Proc., § 639 or mediators acting under Civ. Code, § 4607), or (3) privately attempting to settle disputes, such as the defendant here. [¶] We therefore hold that absolute quasi-judicial immunity is properly extended to these neutral third parties for their conduct in performing dispute resolution services which are connected to the judicial process and involve either (1) the making of binding decisions, (2) the making of findings or recommendations to the court or (3) the arbitration, mediation, conciliation, evaluation or other similar resolution of pending disputes. As the defendant was clearly engaged in this latter activity, she is entitled to the protection of such quasi-judicial immunity." (*Howard*, *supra*, 222 Cal.App.3d at pp. 859-860.)

Recently, this court applied the quasi-judicial privilege to a private arbitrator who allegedly failed to disclose a potentially disqualifying conflict of interest. (*Weisbach*, *supra*, 186 Cal.App.4th 893.) In so holding, we accepted the underlying rationale in *Howard* that in determining whether absolute immunity applies to the conduct of a public

7

or private arbitrator, courts must look at the nature of the duty performed, and not to the name or classification of the person who performs it. (*Id.* at p. 901.)

More recently, in *McClintock v. West* (2013) 219 Cal.App.4th 540 (*McClintock*), our colleagues in the Fourth District Court of Appeal affirmed the application of the quasi-judicial privilege to immunize a guardian ad litem appointed in a family law case from claims of negligence, fraud, breach of fiduciary duty, breach of contract and intentional infliction of emotional distress. Like here, in *McClintock*, a guardian ad litem, who was appointed by the court to represent the interests of one of the parties to a divorce proceeding, was sued when the guardian's actions allegedly resulted in financial losses and the loss of custody of the conservatee's children.

The *McClintock* court affirmed the sustaining of a demurrer to the complaint without leave to amend, largely following the rationale of *Howard.* In so doing, the court reflected rhetorically on some of the very same public policy considerations that supported application of the privilege in *Howard,* and which are equally applicable here: "If [the guardian] had known she might be subject to liability for causes of action ranging from negligence to intentional interference with prospective economic advantage, resulting in the potential for years of litigation and financial liability greater than her entire fee for handling the case, would she have ever agreed to the appointment? Why would any qualified person ever accept appointment as a guardian ad litem when his or her decisions could be subject to such post hoc second guessing? [¶] Moreover, in addition to the difficulty of finding anyone to accept such an assignment, the risk of liability could impact how the guardian ad litem carried out her role. As we discussed *ante*, the guardian ad litem does not advocate for her ward in the way an attorney does— her job is acting in the ward's best interests, and the ward might not always agree with the guardian ad litem's decisions. Her ability to act would be compromised if the threat of future liability encouraged a guardian ad litem to put a ward's wishes above his interests. (*Howard, supra,* 222 Cal.App.3d at pp. 853, 857.)" (*McClintock, supra,* 219 Cal.App.4th at pp. 551-552, italics omitted.)

8

Nevertheless, appellant here contends that only judicial officers may issue custody orders under state law, and respondent was utterly without jurisdiction in doing so. Therefore, no judicial privilege for quasi-judicial conduct can attach to acts lacking in lawful jurisdiction.

We agree that the family law court has the sole power to determine whether visitation will occur. (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1208-1209; *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817.) However, even accepting appellant's argument that the family court exceeded its legal authority, or even jurisdiction, to delegate custody supervision to respondent, that does not vitiate application of the quasi-judicial privilege.

In its decision in *Howard*, the court pointed out the need that judicial immunity be broad and applicable to all judicially-related actions regardless of whether the judicial officer exceeded his or her legal authority or jurisdiction to act: "The concept of judicial immunity is long-standing and absolute, with its roots in English common law. It bars civil actions against judges for acts performed in the exercise of their judicial functions and it applies to all judicial determinations, including those rendered in excess of the judge's jurisdiction, no matter how erroneous or even malicious or corrupt they may be. [Citations.] The judge is immune unless 'he [*sic*] has acted in the clear absence of all jurisdiction. [Citations.]' [Citation.]" (*Howard*, *supra*, 222 Cal.App.3d at pp. 851-852, fn. omitted.)

As the *Howard* court explained later in its opinion, it is the *function* being exercised by the immunized individual that is the focus of the privilege's application and not the status or capacity of the individual that controls. (*Howard*, *supra*, 222 Cal.App.3d at pp. 853-855.) The reasons for doing so are clear: "We are persuaded that the approach of the federal courts is consistent with the relevant policy considerations of attracting to an overburdened judicial system the independent and impartial services and expertise upon which that system necessarily depends. Thus, we believe it appropriate that these 'nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process' [citation] should be given absolute quasi-judicial immunity for

9

damage claims arising from their performance of duties in connection with the judicial process. Without such immunity, such persons will be reluctant to accept court appointments or provide work product for the courts' use. Additionally, the threat of civil liability may affect the manner in which they perform their jobs. [Citation.]" (*Id.* at p. 857; see also *McClintock*, *supra*, 219 Cal.App.4th at pp. 551-552, italics omitted; *Weisbach*, *supra*, 186 Cal.App.4th at p. 901 [applying quasi-judicial immunity to private arbitrators necessary for principled and fearless decision-making, and to avoid intimidation caused by the fear of liability arising out of the exercise of arbitral functions].)

In *Greene v. Zank* (1984) 158 Cal.App.3d 497, 506 (*Greene*), the issue was whether California State Bar officials who failed to allow the plaintiff admission into the bar could be sued for civil rights violations. In affirming a dismissal following the sustaining of defendants' demurrer to plaintiff's complaint, the appellate court noted that the "absence of all jurisdiction" is tested, not by the status of the individual performing the challenged act, but by whether the act itself is one "normally performed by a judge." (*Id.* at p. 507.) "Thus, it is well settled that judges and those performing 'judge-like' functions are absolutely immune from [42 United States Code] section 1983 damage liability for acts performed in their judicial capacities. [Citations.]" (*Id.* at p. 508, fn. omitted.)

Appellant concedes that the act of issuing child custody orders is a judicial function. (Fam. Code, § 3022.) Therefore, delegating that judicial authority to another, even if in excess of the delegating judge's power to do so, cloaks the delegate with the same immunity available to the delegating judge when that ostensible authority is exercised.

The very recent case of *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371 (*Christina C.*) is instructive. There, a civil action was brought by a mother and her 10-year-old child against certain employees of the county's social services agency (SSA) involved in the removal of the child her mother's custody. In affirming summary judgment in favor of the SSA workers who had been sued individually, the court rejected

10

the plaintiffs' contention that the child's removal resulted from an improper delegation of the juvenile court's authority: "Mother suggests on appeal that the trial court improperly delegated its authority in these important matters to SSA, including the authority to end the CRISP [Conditional Release to Intensive Supervision Program] and place C.C. with father. But mother offered no challenge in the dependency proceedings to the trial court's delegation, and doing so now does not aid her in this civil lawsuit against SSA. . . . [T]he key consideration pertinent to this appeal is that nothing implicates SSA and its social workers in plaintiffs' belated complaint about the court's allegedly improper delegation of placement authority. Presumably plaintiffs did not sue the dependency court because of judicial immunity. (See, e.g., *Howard*[, *supra*,] 222 Cal.App.3d [at p.] 851 ['The concept of judicial immunity is long-standing and absolute'].) But that does not furnish a basis to sue SSA or its social workers acting under delegated judicial authority." (*Christina C.*, *supra*, 220 Cal.App.4th at p. 1380.)

This case comes to us in a similar posture as the case of *Christina C.* It is clear from the January 25 hearing transcript that the family court judge not only confirmed that respondent had the authority to issue interim custody orders prior to the hearing, but also extended that authority into the future pending completion of the court's own review of the matter. Appellant offered no objection to these statements and pronouncements, nor did she ever seek to set aside respondent's interim custody order at any time over the 13 months during which respondent was supervising the court's underlying custody order, and despite there being eight separate hearings in the family law court at any one of which the issue could have been raised. Under these circumstances, appellant's belated attempt to question whether respondent was properly acting under delegated judicial authority should be rejected, just as it was in *Christina C.*

In conclusion, we find the primary case authority relied on by appellant for the proposition that quasi-judicial immunity does not apply in the absence of legal jurisdiction is factually inapposite. In fact, that authority contains language strongly supporting respondent's position. In that case, *Jamgotchian v. Slender* (2009) 170 Cal.App.4th 1384 (*Jamgotchian*), the question was whether a racing horse steward could

11

be sued for trespass to chattels by refusing the owner access to his horse, and instead requiring the horse to race against the wishes of the owner. (*Id.* at p. 1387.) During the race, the horse was injured. (*Id.* at p. 1392.) On appeal from a grant of summary judgment for the horse steward, the appellate court found that a triable issue of fact existed as to whether the defendant had intentionally interfered with the plaintiff's right to possession of the horse. (*Id.* at pp. 1401-1402.)

In rejecting a number of defenses urged by the horse steward, the court held that if the horse steward prevented the owner from maintaining possession and control of the horse, such conduct would have been outside the scope of the horse steward's authority. Consequently, the court held the undisputed facts did not establish the horse steward was entitled to the protection of quasi-judicial immunity if he committed a trespass to chattel. (*Jamgotchian*, *supra*, 170 Cal.App.4th at p. 1400.) In so holding, the court noted: " ' "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." [Citation.] A judge is not deprived of immunity because the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority; rather, a judge will be subject to liability only when he [*sic*] has acted in the clear absence of all jurisdiction. [Citations.]' (*Greene*[, *supra*,] 158 Cal.App.3d [at pp.] 507-508 . . . .)" (*Jamgotchian*, *supra*, at p. 1400.)

In this case, all of the actions complained of were well within respondent's judicially delegated role as a family court child custody evaluator, whether or not such delegation was legally authorized, and in the absence of any objection by appellant. Accordingly, respondent was not functioning in the "clear absence of all jurisdiction" like the horse steward in *Jamgotchian.* (170 Cal.App.4th at p. 1400.) Consequently, he is entitled to absolute quasi-judicial immunity.

For all of these reasons, the trial court correctly sustained respondent's demurrer on the ground that the wrongful acts alleged were immunized by the common law quasi-judicial privilege.

12

**B. The Trial Court Did Not Abuse Its Discretion in Sustaining the Demurrer Without Leave to Amend**

As to appellant's claim that the court nevertheless erred in not allowing her leave to amend, as we have noted, no request was made by appellant in the trial court for leave to amend, nor did she explain how her FAC could be amended to avoid dismissal by demurrer. We recognize, however, that the failure to make such a request is not dispositive if the showing is made on appeal. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).)

Appellant has the burden to demonstrate "there is a reasonable possibility the defect in the pleading can be cured by amendment. [Citation.] ' ". . . Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. . . ." [Citation.]' [Citation.]" (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7-8; *Rakestraw*, *supra*, 81 Cal.App.4th at p. 44 ["Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend"].)

First, appellant claims that respondent's demurrer only affected the negligence cause of action pleaded in her FAC, and she should be free to pursue her breach of contract and intentional infliction of emotional distress claims. This is incorrect. The demurrer was filed as to each and every cause of action pled in the FAC. Appellant offers no argument or authority that these claims, which are based on the same facts and allegation of misconduct, were improperly dismissed on the basis of the quasi-judicial privilege.

In her opening brief, appellant also suggests it was error not to allow her leave to amend her FAC and allege a claim for civil rights violation (42 U.S.C. § 1983). The basis for this contention is that respondent was acting under color of California law in issuing an interim custody order and this act was without jurisdiction and in violation of appellant's due process right under the federal constitution.

13

Because we conclude that respondent's acts were not unlawful and in the "clear absence of all jurisdiction," he did not deny appellant due process. (See *Greene, supra*, 158 Cal.App.3d at p. 507, citing *Supreme Court of Va. v. Consumers Union* (1980) 446 U.S. 719, 734-735.) Having failed to carry her burden to make a showing how the complaint might be amended to avoid the defenses raised by respondent, we must conclude there was no error in sustaining the demurrer without leave to amend. (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 613-614.)

## IV.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.


15

Trial Court:                              Alameda County Superior Court

Trial Judge:                             Hon. Dennis Hayashi

Counsel for Appellant:                   Law Office of Paul Kleven, Paul Kleven

Counsel for Respondent:                  Supple & Canvel, Rick Canvel,
                                         Robert D. Sanford