Filed 12/12/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| OSVALDO VERGARA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>KAREN OUSE,<br><br>    Defendant and Respondent. | H052022<br>(Santa Cruz County<br> Super. Ct. No. 20CV01681) |


This suit arises out of a divorce. In December 2018, after Osvaldo Vergara's marriage was dissolved, his former wife was awarded sole legal and physical custody of the former couple's two minor children. In the custody order, Vergara was allowed visitation with his children under the supervision of a licensed therapist, who was selected by Vergara's former wife. However, in August 2019, the therapist, Karen Ouse, suspended the visitations because, in her estimation, they could not be successful unless Vergara admitted the kidnapping and neglect charges filed against him and acknowledged their impact on his children.

In August 2020, Vergara sued Ouse. Vergara asserted three causes of action, including one for reckless infliction of emotional distress based on suspension of the visitations. Concluding that Ouse prevailed as matter of law on all three causes of action, the trial court granted summary judgment. In doing so, the court concluded that Ouse was entitled to judgment on the infliction of emotional distress claim based on suspension

of visitation because of the litigation privilege and quasi-judicial immunity and also because Vergara had failed to allege conduct sufficient to state a valid claim for intentional infliction of emotional distress.

On appeal, Vergara challenges the rejection of only one claim: his claim for infliction of emotional distress based on suspension of visitation. As explained below, we conclude that quasi-judicial immunity bars this claim and therefore affirm the grant of summary judgment.

## I. BACKGROUND

According to Vergara's complaint, he married Tara Snyder in 2011, and they had two children together. By 2015, Snyder decided to divorce Vergara, and with Snyder's consent Vergara took their two children to Chile, where Vergara was born. In December 2016, after the stay had been extended several times, Snyder arrived in Chile and told Vergara that she planned to return to California with the children the next month. When Vergara objected to the children leaving so quickly, Snyder sought and obtained an interim custody award from a Chilean court, which was finalized in July 2017.

Snyder and the children returned to the United States, and in December 2018, the trial court granted sole legal custody to Snyder. In the order awarding custody, the trial court granted Vergara "professionally and therapeutically supervised" visitation with his children. The order stated that supervision was to be carried out by a third party mutually agreeable to the parents but that Snyder would select the supervisor if there was no agreement on the party. The order also provided that the supervisor would be a licensed therapist who would be available to consult with Vergara concerning his parenting skills and that the supervisor would share all information concerning the visits with Snyder and with the court. Finally, the order required Vergara to deliver the children's passports and other papers concerning their citizenship or residence to the mother and warned that

2

removal of the children from California without the mother's prior written approval would be considered kidnapping.

Snyder and Vergara apparently were unable to agree on a visitation supervisor, and Synder selected Ouse, a licensed marriage and family therapist, for the role. Although the record does not specify, Ouse appears to have supervised some visitation sessions following her selection. However, in August 2019, Ouse sent Vergara a letter informing him that she would no longer provide such sessions. Ouse explained to Vergara that, in a recent session, "you have denied the charges that have been filed against you (of felony kidnapping and neglect of your children)" and that for the therapeutic supervised visitation to be successful "you would need to admit to these charges and acknowledge how your actions have impacted your children." Ouse concluded that she was "suspending the TSV [therapeutic supervised visitation] indeterminably."

In August 2020, Vergara sued Ouse. Vergara asserted three causes of action: (1) a claim seeking to recover the fees charged by Ouse on the ground that she did not have a certificate to provide professional supervision services and was not licensed to do so, (2) reckless infliction of emotional distress based on Ouse's use of her role as a therapeutic visitation supervisor to compel Vergara to undergo therapy sessions, and (3) reckless infliction of emotional distress based on suspension of supervised visitation.

In July 2023, Ouse moved for summary judgment. Ouse argued that she did not require a certificate to provide supervised visitation sessions and that she was qualified to provide such supervision. Ouse also argued that she did not compel Vergara to undergo therapy sessions and that under the California Standards of Judicial Administration—which in the trial court are incorrectly identified as the California Rules of Court—she was authorized to interrupt and terminate visitation sessions. Finally, Ouse argued that quasi-judicial immunity under *Howard v. Drapkin* (1990) 222 Cal.App.3d 843 (*Howard*) barred any claim against her for terminating the supervised visitation sessions.

3

In response, Vergara conceded that Ouse was entitled to judgment as a matter of law on his first two causes of action. However, he argued that Ouse was not entitled to quasi-judicial immunity against his third cause of action, the claim for intentional infliction of emotional distress based on terminating visitation sessions. According to Vegara, under *Howard* quasi-judicial immunity is available only for neutral third parties providing dispute resolution services. Moreover, Vegara continued, in implementing the supervised visitation provisions of the trial court's December 2018 order, Ouse was not providing dispute resolution services: "Rather, she was performing a monitoring function that the Family Court had deemed to be necessary and appropriate to the circumstances of the case." Finally, although Ouse did not argue that his claim was barred by the litigation privilege, Vergara contended that the privilege was inapplicable.

The trial court granted Ouse summary judgment. The court noted that Vergara had conceded that his first two causes of action should be dismissed. It also ruled that Vergara's remaining claim for infliction of emotional distress based on suspension of visitation failed for three reasons. First, addressing the litigation privilege raised by Vergara, the trial court concluded that Ouse's August 2019 letter was absolutely privileged. Second, citing *Bergeron v. Boyd* (2014) 223 Cal.App.4th 877 (*Bergeron*), and other cases, the trial held that quasi-judicial immunity barred the infliction of emotional distress claim. Third, the trial court, apparently sua sponte, considered whether Vergara had pleaded a valid claim for infliction of emotional distress based upon Ouse's suspension of visitation. Noting that Ouse had authority to suspend supervised visits, the trial court ruled that Ouse's alleged conduct was not extreme and outrageous and that the alleged conduct did not evidence any intent to inflict serious injury on Vergara.

Vergara filed a timely notice of appeal from the summary judgment order.

## II. DISCUSSION

Vergara contends that all three of the grounds on which the trial court granted summary judgment on the intentional infliction of emotional distress claim at issue were erroneous. We need consider only one: quasi-judicial immunity. Reviewing the summary judgment order de novo (see, e.g., *Hobbs v. City of Pacific Grove* (2022) 85 Cal.App.5th 311, 321), we conclude that Ouse is entitled to quasi-judicial immunity for suspending visitation and therefore is entitled to judgment as a matter of law on Vergara's claim for intentional infliction of emotional distress based on the suspension.

### A. Relevant Legal Principles

We begin by reviewing judicial and quasi-judicial immunity.

As Justice Tobriner observed (while on the Court of Appeal), "the civil immunity of the judiciary is deeply rooted in California law." (*Oppenheimer v. Ashburn* (1959) 173 Cal.App.2d 624, 630; see *Pickett v. Wallace* (1881) 57 Cal. 555, 557.) The doctrine of judicial immunity "bars civil actions against judges for acts they perform in the exercise of their judicial functions . . . 'including those rendered in excess of the judge's jurisdiction, no matter how erroneous or even malicious or corrupt they may be,' except when the judge acts in the clear absence of all jurisdiction." (*Holt v. Brock* (2022) 85 Cal.App.5th 611, 620-621 (*Holt*).) Two policies support this immunity. First, judicial immunity "protects the finality of judgments and discourages inappropriate collateral attack." (*Ibid*.) Second, it " ' "protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigations," ' " which in turn encourages uninhibited and independent decision making. (*Ibid*; see *McClintock v. West* (2013) 219 Cal.App.4th 540, 550 (*McClintock*).)

Quasi-judicial immunity extends the protection afforded judges to individuals performing functions " 'intimately related to the judicial process.' " (*Holt, supra*, 85 Cal.App.5th at p. 622.) Like judicial immunity, quasi-judicial immunity is afforded " 'to

5

promote uninhibited and independent decisionmaking.' " (*McClintock*, *supra*, 219 Cal.App.5th at p. 550; see also *Holt*, *supra*, 85 Cal.App.5th at p. 622 ["As with judges, immunity is necessary for these persons to perform their function independently and impartially."].) Quasi-judicial immunity also serves another important purpose. The judicial system depends upon experts providing advice on specific issues as well as guardians, trustees, and others to perform important functions on the court's behalf, and "[w]ithout immunity" such individuals " 'will be reluctant to accept court appointments.' " (*Holt*, *supra*, 85 Cal.App.5th at p. 623.)

Quasi-judicial immunity has been extended to three classes of individuals. The first class includes commissioners, referees, and hearing officers who act as temporary judges or otherwise perform subordinate judicial duties. (*Holt*, *supra*, 85 Cal.App.5th at p. 621; see also *ibid*. [noting that this class also includes prosecutors, grand jurors, and others connected with the judicial process through investigating crimes and instituting criminal proceedings].) The second class includes mediators, neutral factfinders, and others "who function apart from the courts but are engaged in neutral dispute resolution." (*Id*. at p. 622.) The third class afforded quasi-judicial immunity is individuals "who serve functions integral to the judicial process and act as arms of the court." (*Ibid*.) This class includes not only court-appointed guardians, receivers, and trustees, but also therapists, evaluators, probation officers who prepare presentencing reports, and "psychiatrists involved in terminating parental rights." (*Ibid*.)

Several cases have applied quasi-judicial immunity to individuals involved in family law matters. The seminal case is *Howard v. Drapkin*, *supra*, 222 Cal.App.3d 843. In *Howard*, in a stipulation signed by the trial court, the parties to a child custody and visitation dispute agreed to hire a psychologist to evaluate charges of sexual abuse against the father and render nonbinding findings and recommendations. (*Id*. at p. 848.) Asserting that the psychologist failed to disclose connections with the father and abused

6

her during a final evaluation meeting, the mother sued the psychologist for, among other things, inflicting severe emotional distress. (*Id*. at pp. 849-850.) The trial court held that quasi-judicial immunity barred this claim, and the Court of Appeal affirmed. (*Id*. at pp. 850, 851-860.) After reviewing the history and purpose of quasi-judicial immunity (*id*. at pp. 851-853), the Court of Appeal concluded that immunity is afforded " 'nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process' " (*id*. at p. 857) and that this immunity should be extended to "neutral persons who attempt to resolve disputes" (*id*. at p. 859; see *id*. at pp. 858-860).

Even more pertinently, *Bergeron v. Boyd*, *supra*, 223 Cal.App.4th 877 held that quasi-judicial immunity barred claims against a child custody evaluator for exercising authority to issue an interim custody order. The trial court initially ordered the parties in a child custody dispute to retain a child custody evaluator to produce a report for the court and ordered the parties to comply with interim custody orders from the evaluator. (*Id*. at pp. 882-883.) The mother sued the psychologist hired as the evaluator claiming breach of contract, negligence, and intentional infliction of emotional distress due, among other things, to to be an interim custody order restricting access to her children. (*Id*. at p. 880.) The Court of Appeal concluded that quasi-judicial immunity barred any claim based on the evaluator's issuance of interim custody orders. (*Id*. at p. 889.) The "act of issuing child custody orders," the court explained, "is a judicial function," and therefore "delegating that judicial authority to another" to perform this function "cloaks the delegate[e] with the same immunity available to the delegating judge when that ostensible authority is exercised." (*Id*. at p. 887.)

## B. Application

Quasi-judicial immunity bars the infliction of emotional distress claim at issue because, much like the evaluator in *Bergeron*, in suspending visitation Ouse was exercising a judicial function that the trial court delegated to her.

7

In suspending Vegara's visitation, Ouse was performing a judicial function. Just as issuing child custody orders is a judicial function (see Family Code, § 3022), issuing orders concerning visitation is a judicial function. The Family Code provides that in making child custody orders "the court shall grant reasonable visitation rights to a parent when it is shown that the visitation would be in the best interest of the child . . . ." (*Id.*, § 3100, subd. (a).) Thus, Ouse was performing a judicial function when she suspended Vergara's visitations.

In suspending Vergara's visitation, Ouse also was exercising authority delegated to her by the courts. Although the trial court's December 19, 2018 order for custody and visitation did not expressly delegate authority to suspend visitation, the California Standards of Judicial Administration do. Standard 5.20 governs the duties and obligations governing individuals providing supervised visitation under the Family Code. (Cal. Stds. Jud. Admin., § 5.20(a).) Under this standard, if a supervised visitation provider determines that rules governing a visit have been violated, a child has become acutely distressed, or the safety of a child or the provider is at risk, the provider is authorized to terminate the visit. (Cal. Stds. Jud. Admin., § 5.20(p)(2).) As the Standards of Judicial Administration are issued by the Judicial Council (Family Code, § 3200), they delegate judicial authority. Consequently, in suspending Vergara's visitation, Ouse was performing a judicial function using judicially delegated authority. Therefore, under *Bergeron*, Ouse's exercise of that authority is protected by quasi-judicial immunity. (*Bergeron*, *supra*, 223 Cal.App.4th at pp. 887-888.)

Indeed, this case is indistinguishable from *Bergeron*. As discussed above, in *Bergeron* a psychologist selected by the parties to provide a child custody evaluation was sued based on interim orders he issued restricting the mother's access to her children. (*Bergeron*, *supra*, 223 Cal.App.4th at pp. 880, 886-887.) Because "issuing child custody orders is a judicial function," and the trial court delegated to the psychologist judicial

8

authority to modify custody, the Court of Appeal ruled that the psychologist enjoyed immunity in exercising that authority just as a judge would. (*Id*. at p. 887.) Similarly, in this case, a licensed marriage and family therapist was selected by one of the parties (Snyder) to supervise visitations by Vergara pursuant to a court order. In addition, as a provider of supervised visitation, Ouse was delegated judicial authority to terminate such visitation. (Cal. Stds. Jud. Admin., § 5.20(p)(2).) Accordingly, just like the psychologist in *Bergeron*, Ouse was performing a judicial function using judicially delegated authority, and therefore she should enjoy the same immunity that a judge performing that function would.

This conclusion is consistent with federal decisions. (See *Howard*, *supra*, 222 Cal.App.3d at pp 855-857 [considering and following federal decisions concerning quasi-judicial immunity].) For example, in *Deluz v. The Law Offices of Frederick S. Cohen* (E.D. Cal. Feb. 17, 2011) 2011 WL 677914, the United States District Court for Eastern District of California considered whether quasi-judicial immunity protected a social worker ordered by the Sacramento County Superior Court to supervise visitation against claims for, among other things, intentional infliction of emotional distress. (*Id*. at pp. *1-*2.) Noting that quasi-judicial immunity extends to individuals " 'who perform functions closely associated with the judicial process,' " the court ruled that the child visitation supervisor was protected by quasi-judicial immunity because she was performing court-ordered functions concerning the children and their mother. (*Id*. at p. *5.) Other federal decisions similarly have held that quasi-judicial immunity protects child visitation supervisors. (See *El-Shabazz v. Henry* (E.D.N.Y. Oct. 29, 2012) 2012 WL 5347824, p. *5 [applying quasi-judicial immunity to claims against social worker "charged by Family Court with supervising plaintiff's visits with his son"]; *McKnight v. Middleton* (E.D. Cal. 2010) 699 F.Supp.2d 507, 527-528 [affording quasi-judicial immunity to social worker "appointed by the Family Court to conduct therapeutic

9

supervised visitations"]; *Gutierez v. Willbrand* (N.D. Cal. June 11, 1996) 1996 WL 345607, p. *2 [holding that "visitation supervisors" are "immune from damages for . . . performing quasi-judicial actions" or "acting pursuant to court order"].) Nor have we found any decisions holding that child visitation supervisors are not protected quasi-judicial immunity. Thus, uncontradicted precedent supports the conclusion that quasi-judicial immunity protects Ouse.

This conclusion is also supported by the policies underlying quasi-judicial immunity. As noted above, judicial immunity—and, by extension, quasi-judicial immunity—"protects the finality of judgments and discourages inappropriate collateral attack." (*Holt*, *supra*, 85 Cal.App.5th at p. 621; see *McClintock*, *supra*, 219 Cal.App.4th at p. 550; *Howard*, *supra*, 222 Cal.App.3d at p. 852.) This concern supports application of quasi-judicial immunity here because, rather than filing a new suit against Ouse, Vergara could have moved in the on-going proceeding to resume supervised visitation or to appoint a new supervisor. Applying quasi-judicial immunity also helps to promote "uninhibited and independent decisionmaking" by visitation supervision providers and to ensure that the threat of vexatious lawsuits does not make such providers reluctant to accept court appointments (*Howard*, *supra*, 222 Cal.App.3d at pp. 853, 857)—the other policies underlying quasi-judicial immunity. (See *Holt*, *supra*, 85 Cal.App.5th at p. 623; *McClintock*, *supra*, 219 Cal.App.4th at p. 551.)

In arguing that Ouse is not protected by quasi-judicial immunity before the trial court, Vergara did not cite any precedent for denying immunity to visitation supervision providers or attempt to explain why providers should not enjoy quasi-judicial immunity. Nor did Vergara deny that Ouse was acting on behalf of the trial court: To the contrary, Vergara acknowledged that Ouse "was performing a monitoring function that the Family Law Court had deemed to be necessary and appropriate to the circumstances of the case." Instead, Vergara argued that under *Howard* quasi-judicial immunity is extended only to

10

neutral third persons engaged in mediation, conciliation, and similar dispute resolution efforts. As the trial court recognized, that is wrong. *Howard* expressly recognized that quasi-judicial immunity should be afforded any " 'nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process' " and *extended* that protection to neutrals involved in dispute resolution efforts. (*Howard*, *supra*, 222 Cal.App.3d at p. 857; see also *id*. at pp. 858-860.) Accordingly, subsequent decisions have recognized that neutrals involved in dispute resolution efforts are only one of several classes of individuals afforded quasi-immunity (*Holt*, *supra*, 85 Cal.App.5th at pp. 621-622), and therefore applied quasi-judicial immunity to a broker appointed to conduct a partition sale (*id.* at pp. 620-625), a guardian ad litem (*McClintock*, *supra*, 219 Cal.App.4th at pp. 550-53), and, most pertinently here, a child custody evaluator delegated authority to issue interim custody orders (*Bergeron*, *supra*, 223 Cal.App.4th at pp. 884-889).

On appeal, Vergara abandons this argument that Ouse is not protected by quasi-judicial immunity because she was not providing dispute resolution services. Instead, Vergara asserts four new arguments: (1) Ouse is not protected by quasi-judicial immunity because she suspended his visitations for the partisan purpose of coercing him into admitting to kidnapping his children, (2) she was "privately selected" rather than appointed by the trial court, (3) visitation monitors do not assist trial courts in performing any " 'subordinate judicial function,' " and (4) Ouse acted beyond her limited authority to suspend visitation. " ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . ." ' " (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.) Moreover, the prohibition against raising new arguments is especially stringent where, as with Vergara's first and fourth arguments, "the new theory depends on controverted factual questions whose relevance was not made to appear at trial," and the opposite party therefore had no chance to present evidence opposing that theory. (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780.) As

11

parties such as Vergara who represent themselves on appeal are " ' "to be treated like any other party" ' " and " 'must follow the correct rules of procedure' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31; *Barton v. New United Manufacturing, Inc*. (1996) 43 Cal.App.4th 1200, 1210), we deem these new arguments forfeited.

Nonetheless, it should be noted that Vergara's new arguments contradict precedent. Far from suggesting that immunity is lost when an individual acts for a partisan purpose or exceeds his or her authority, *Howard* recognized that judicial immunity—and, by extension, quasi-judicial immunity—"applies to all judicial determinations, *including those performed in excess of the judge's jurisdiction*, not matter how erroneous or even malicious *or corrupt* they may be." (*Howard*, *supra*, 222 Cal.App.4th at p. 852, italics added), and it held that a child custody evaluator was protected by quasi-judicial immunity even though she allegedly had a prior professional relationship with the father and tried to coerce the plaintiff. (*Id*. at pp 849-850, 860.) In addition, much like Ouse, the child custody evaluator in *Howard* was privately selected in a stipulation between the parties that was later signed by the trial court. (*Id.* at p. 848.) Finally, Vergara's assertion that Ouse was helping him rather than assisting the trial court in performing a judicial function directly contradicts the Standards of Judicial Administration: As noted above, those Standards charge child visitation supervision providers with determining whether, in light of violations of the rules of the visit, distress of the children, or risk of violence, visitations should be terminated. (Cal. Stds. Jud. Admin., § 5.20(p)(2).)

Accordingly, we conclude that quasi-judicial immunity protects Ouse's suspension of Vergara's visitations and as a matter of law bars Vergara's infliction of emotional distress claim based on the suspension.

### III. DISPOSITION

The order dated October 17, 2023, granting summary judgment is affirmed. Respondent is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

12

_____
BROMBERG, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
DANNER, J.

*Vergara v. Ouse*
H052022

Trial Court:                              Santa Cruz County Superior Court
                                          Superior Court No.:  20CV01681


Trial Judge:                              The Honorable Timothy R. Volkmann



Osvaldo Vergara in pro per for Plaintiff  Osvaldo Vergara in pro per.
and Appellant:




Attorneys for Defendantand Respondent     Callahan,Thompson Sherman & Caudill
Karen Ouse:
                                          David G. Jensen




*Vergara v. Ouse*
H052022