[No. A126283. First Dist., Div. Four. July 15, 2010.]

LA SERENA PROPERTIES, LLC, et al., Plaintiffs and Appellants, v. GERALD WEISBACH et al., Defendants and Respondents.

**COUNSEL**

Phillips, Downs & Simontacchi and Scott M. Phillips for Plaintiffs and Appellants.

Long & Levit and John Michael Higginbotham for Defendant and Respondent Gerald Weisbach.

John S. Warnlof for Defendant and Respondent American Arbitration Association.

**OPINION**

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

Plaintiffs La Serena Properties, LLC, Casa Margaritaville, Inc., and Steven Yates (appellants) appeal from a judgment entered after the trial court sustained the demurrers of defendants Gerald Weisbach (Weisbach) and the American Arbitration Association (AAA) (collectively, respondents) without leave to amend. Appellants sued respondents for damages, as well as other relief, alleging five separate causes of action, all of which arise out of the alleged failure of arbitrator Weisbach to disclose a certain conflict of interest during the appointment process.

We agree with the trial court that the alleged claims of misconduct, no matter how pleaded, all arise out of the conflict of interest disclosure procedure that is integrally part of the arbitration process. Thus, respondents

are protected from liability by the common law arbitral immunity for quasi-judicial acts. Accordingly, we affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUNDS

When considering an appeal from a judgment entered after the trial court sustained a demurrer without leave to amend, we "accept as true all well-pleaded facts in the complaint and give a reasonable construction to the complaint as a whole." (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 140, fn. 1 [72 Cal.Rptr.3d 553], citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In addition, we may consider matters that are properly the subject of judicial notice, and were considered by the trial court. (*Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1543 [100 Cal.Rptr.3d 86].) Therefore, our factual summary is derived from the complaint, including exhibits A through F incorporated by reference in that pleading. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 [104 Cal.Rptr.2d 239].)[1]

The complaint alleges that appellants entered into a construction contract and a subsequent promissory note with Merchant Builders, Inc. (MBI), in 2002, both of which included mandatory AAA arbitration provisions. Subsequently, a dispute arose between appellants and MBI, and appellants demanded arbitration under the AAA arbitration clauses contained in the contract and note. MBI refused to arbitrate, and appellants filed a motion to compel arbitration. The motion was granted.

After being compelled to go to arbitration, it is alleged that MBI's lawyers conspired among themselves to persuade appellants to accept Weisbach as the arbitrator, without disclosing that Weisbach had a long-standing "family relationship" with one of MBI's counsel, David Baskin (Baskin), in that Weisbach was the "boyfriend" of Baskin's sister. Appellants then "tentatively agreed" to Weisbach serving as the arbitrator.

A "Notice of Appointment" was sent to Weisbach by AAA, indicating that he had been selected as arbitrator. The notice included a conflicts of interest

---

[1] Both sides referred to the exhibits attached to the complaint in arguing the demurrer, and no objections were lodged. In addition, two requests for judicial notice were made by respondents below. The parties disagree as to whether the trial court ruled on these requests, although on appeal no assignment of error is made by either side in connection with respondents' requests. In any event, like the trial court, we determine that the documents, which were the subject of respondents' requests for judicial notice, are not material to our analysis.

disclosure form, which AAA directed Weisbach to complete. Weisbach was informed in the notice and disclosure form that he would not be able to serve as arbitrator until the form had been duly executed and was on file with AAA. The form included the following admonition and instruction: "It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship [*sic*] with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration, or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubt should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosure may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties."

Weisbach completed the form disclosing only a former association with Gerald K. Carroll, an attorney who worked with Long & Levit while Weisbach served as "of counsel" to the firm. Weisbach dated the disclosure form September 7, 2005, and signed it.

The complaint also alleges that Weisbach joined the conspiracy with MBI's counsel at "some time prior to September 12." "Hours later," on September 12, 2005, Weisbach sent an e-mail to AAA stating that he had just received a call from Baskin informing Weisbach that Baskin was representing MBI in the dispute. Weisbach then stated: "David is a personal friend. While I do not believe that our relationship would prejudice my hearing of this matter, this relationship does present a potential conflict. Please so inform the parties and advise." A copy of the e-mail was faxed to counsel in the case, along with a cover letter from AAA, asking that AAA be advised within 15 days if there was any objection to the appointment of Weisbach. Apparently, neither side then objected to Weisbach's service as arbitrator.

With the agreement of MBI's counsel, Weisbach did not disclose his "familial" relationship with Baskin, or the "depth and character of his relationship with the Baskin family," including the fact that he "was in a romantic relationship with Baskin's sister." Appellants claim that the partial disclosures of Weisbach's relationships with Carroll and Baskin were intended to appear as if complete disclosures had been made when the full nature of the conflict was concealed from appellants.

The arbitration commenced on March 26, 2006, and extended over 10 days. MBI was represented by Baskin and his son, Caleb Baskin. An arbitration

award was issued by Weisbach on July 20, 2006, and was clarified in an amended award on September 26, 2006. The final award denied more than 20 claims made by appellants against MBI, including eight fraud claims, but awarded appellants a total of $12,336.44 for two claims. Appellants were also awarded $4,112.15 in attorney fees, and reimbursement of $5,250.01, which they previously had paid in excess of their allocated 50 percent share of the costs of the arbitration.

Almost two years later, on May 28, 2008, the president of MBI wrote to AAA, complaining about the failure of Weisbach to disclose his "intimate" involvement with Baskin's sister. MBI complained that this conflict caused Weisbach to struggle to render an impartial "verdict," and ultimately resulted in a " 'non-decision' " or " 'split verdict.' " Appellants alleged that prior to their receipt of their copy of this letter they had no knowledge of this relationship and Weisbach's failure to disclose it.

Subsequently, court proceedings were commenced in the Santa Cruz County Superior Court seeking to set aside the arbitration award. That relief was ultimately granted on October 16, 2008.

Appellants filed the complaint in this action on January 13, 2009.[2] The causes of action alleged against respondents included fraud, fraudulent concealment, breach of contract, unfair business practices, and negligence. Appellants sought an award of damages, disgorgement of profits, punitive damages, prejudgment interest, and costs, including attorney fees.

The first cause of action alleged that Weisbach and AAA had committed fraud because they failed to disclose Weisbach's relationship with Baskin's sister, which fraudulently induced appellants to select him as the arbitrator. In the second cause of action alleging fraudulent concealment, appellants alleged that Weisbach deliberately concealed his relationship with Baskin's sister in order to secure appellants' consent for Weisbach to serve as the arbitrator. This same claim is asserted against AAA, which allegedly "ratified" Weisbach's intentional misconduct.

The third cause of action for breach of contract is alleged only against AAA and claimed that AAA breached its arbitration contract with appellants by failing to make a full and complete disclosure of its arbitrator's "qualifications and fitness to serve as a fair and neutral arbitrator." This same claim similarly alleged that AAA failed to supervise Weisbach in connection with his service as an arbitrator. The fourth cause of action claimed violations of Business and Professions Code sections 17200 and 17500 and alleged that

---

[2] All further dates are in the calendar year 2009, unless otherwise indicated.

AAA engaged in false and misleading advertising by advertising to the public that it maintains a panel of "qualified and neutral arbitrators," and by providing parties with completed disclosure forms falsely attesting to its "rigorous investigation into the prospective arbitrator's impartiality for their particular dispute." The fifth cause of action for negligence is alleged only against AAA and claimed that AAA failed to use reasonable care to ensure that proper disclosures were made by Weisbach.

Separate demurrers were filed by respondents, contending that the absolute arbitral immunity for quasi-judicial acts barred appellants' suit. Both demurrers also asserted that, pursuant to AAA's arbitration rules to which appellants agreed to be bound, vacation of the arbitration award was the sole remedy for any alleged misconduct committed by respondents arising from the proceedings. The demurrers were opposed by appellants, and a hearing was held in the matter on April 30.

The trial court sustained both demurrers without leave to amend. The ruling was based upon the court's determination that the failure to disclose Weisbach's relationship with Baskin's sister, even if involving respondents' complicity, fell within the absolute arbitral immunity.[3]

## III.

## ANALYSIS

The doctrine of absolute judicial immunity has its roots in the English common law, and has been applied in this state for more than a century. (*Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 851–852 [271 Cal.Rptr. 893].) It protects judges from civil lawsuits for acts performed as part of the judicial function. It is limited to acts " 'normally performed by a judge,' " and does not include purely administrative or legislative acts. (*Id.* at p. 851, fn. 3.) Immunity applies if the acts fall within the scope of the judicial function, even if the conduct complained of was malicious or corrupt. (*Id.* at p. 851.)

Common law judicial immunity has been extended to private and public arbitrators. The leading decision in California on arbitral immunity is *Stasz v. Schwab* (2004) 121 Cal.App.4th 420 [17 Cal.Rptr.3d 116] (*Stasz*). That case did not involve an allegation of failure to disclose a potential conflict of interest, but a claim that the arbitrator was biased against one of the parties. (*Stasz, supra,* 121 Cal.App.4th at p. 430.)

The court extensively reviewed the history of the arbitral immunity, and the stated reasons for its continuing application. It began by quoting from two

---

[3] The trial court did not rule on the alternative waiver ground asserted by respondents based on the contract and arbitration rules of AAA.

earlier California Supreme Court decisions: "As our Supreme Court has stated: ' "Arbitrators are judges chosen by the parties to decide the matters submitted to them . . . ." . . . Arbitrators have been extended the protection of judicial immunity, because they perform " 'the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' " ' (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 909 [30 Cal.Rptr.2d 265, 872 P.2d 1190] . . . .) 'It long has been recognized that, in private arbitration proceedings, an arbitrator enjoys the benefit of an arbitral privilege [of immunity] because the role that he or she exercises is analogous to that of a judge. . . . "There is hardly any aspect of arbitration law and practice more settled, both in domestic and international relations, than the immunity of arbitrators from court actions for their activities in arriving at their award." . . . This rule—immunizing arbitrators in private contractual arbitration proceedings from tort liability—is well established in California.' (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 650 [29 Cal.Rptr.2d 152, 871 P.2d 204] . . . .)" (*Stasz, supra*, 121 Cal.App.4th at p. 430.)

Later, the *Stasz* opinion discussed the multiple public policy reasons offered by previous courts for applying the immunity: California's public policy encouraging arbitration as an efficient means for resolving disputes " 'has created the need for independent judgments which are free from fear of legal action. . . . Arbitral immunity furthers this need . . . . "[T]he independence necessary for principled and fearless decision-making" is best achieved by shielding persons involved in the arbitral process from ". . . intimidation caused by the fear of a lawsuit" arising out of the exercise of arbitral functions. . . . [¶] 'The existence of arbitral immunity is also in part due to the resemblance of arbitration proceedings to judicial proceedings. . . . "[A]lthough arbitration is a proceeding different from a court proceeding and the functions performed by the arbitrator are somewhat different from those of the judge, arbitration is as much an adjudicatory process as the judicial process." . . . This comparability in functions creates a similar necessity for independence in decisionmaking. . . . Thus, it is reasonable to use arbitral immunity just as judicial immunity does in the judicial arena, to protect the decisionmaking process from reprisals by dissatisfied litigants.' (*Thiele v. RML Realty Partners* (1993) 14 Cal.App.4th 1526, 1531 [18 Cal.Rptr.2d 416] . . . .)" (*Stasz, supra*, 121 Cal.App.4th at p. 431.)

In determining whether absolute immunity applies to the conduct of a public or private arbitrator, "the courts look at 'the nature of the duty performed [to determine] whether it is a judicial act—not the name or classification of the officer who performs it, and many who are properly classified as executive officers are invested with limited judicial powers.' [Citation.]" (*Howard v. Drapkin, supra*, 222 Cal.App.3d at p. 853.) Where immunity applies, it likewise shields the sponsoring organization, such as AAA here, from liability arising out of the quasi-judicial misconduct alleged.

This includes claims for breach of contract resulting from the sponsoring organization's alleged failure to appoint an ostensibly neutral arbitrator. (*Stasz, supra*, 121 Cal.App.4th at pp. 436–437.)

■ Central to impartial decisionmaking by arbitrators and judges alike is the need for them to make disclosures that may give rise to a challenge to the judge's impartiality by one of the parties, even if the judge or arbitrator concludes that he or she is not disqualified. The responsibility of judges to make such disclosures is well codified under California law. Canon 3E(2) of the California Code of Judicial Ethics states: "In all trial court proceedings, a judge shall disclose on the record information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification." ■ For trial judges, noncompliance with this ethical disclosure requirement may subject the judge to discipline by the Commission on Judicial Performance. (Cal. Const., art. VI, § 18.)

■ Similarly, a person serving as an arbitrator pursuant to an arbitration agreement has statutory and ethical duties to comply with certain disclosure requirements. Code of Civil Procedure section 1281.9, subdivision (a) mandates that a person "proposed" to serve as a neutral arbitrator "shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." The section goes on to describe those types of relationships that must be disclosed, including "[a]ny professional or significant personal relationship the proposed neutral arbitrator . . . has or has had with any party to the arbitration proceeding or lawyer for a party." (Code Civ. Proc., § 1281.9, subd. (a)(6).)

■ Ethics Standards for Neutral Arbitrators in Contractual Arbitration were adopted by the Judicial Council effective July 1, 2002, and a person proposed as a private arbitrator must also comply with them. By statute, these standards are mandated to cover, among other subjects, the "disclosure of interests, relationships, or affiliations that may constitute conflicts of interest . . . ." (Code Civ. Proc., § 1281.85, subd. (a).) Standard 7(d) addresses what relationships must be disclosed by a "proposed" arbitrator. The disclosure includes situations where "[t]he arbitrator or a member of the arbitrator's immediate family has or has had a significant personal relationship with any party or lawyer for a party." (Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration, std. 7(d)(3).)

■ The importance of this disclosure responsibility to the proper functioning of the arbitration process has recently been discussed in *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565 [103 Cal.Rptr.3d 197]: "Courts

have long struggled with the problem of ensuring not only the neutrality but also the perception of neutrality of arbitrators, who wield tremendous power to decide cases and whose actions lack, for the most part, substantive judicial review. As the United States Supreme Court observed in vacating an arbitration award under the Federal Arbitration Act, 'It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.' (*Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145, 148–149 [21 L.Ed.2d 301, 89 S.Ct. 337] . . . ; see *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 504 [55 Cal.Rptr.2d 685] [disclosure required when disclosed information might 'create an impression of possible bias in the eyes of the hypothetical, reasonable person']; accord, *Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1508 [38 Cal.Rptr.2d 107].)" (*Mahnke v. Superior Court, supra,* 180 Cal.App.4th at pp. 573–574.) So important is this duty to disclose potential disqualifying relationships that a failure to disclose serves as a basis for setting aside the arbitration award. (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1370 [131 Cal.Rptr.2d 524].)[4]

■  While the parties have not cited a California case directly on point, and we have not found one, we have no doubt that the alleged failure to make adequate disclosures of potential conflicts of interest falls within the scope of the absolute immunity for quasi-judicial acts. Arbitrators are mandated by law to make disclosures for precisely the same reasons that judges must do so. Therefore, the process of making these disclosures is virtually identical to the " 'functions normally performed by judges.' " (*Howard v. Drapkin, supra,* 222 Cal.App.3d at p. 854.)

Despite the absence of direct California precedent, respondents' briefs below and on appeal refer to several out-of-state cases supporting the conclusion that a failure by a proposed arbitrator to disclose a potentially disqualifying relationship is immunized conduct. In fact, one of them, *Blue Cross Blue Shield of Texas v. Juneau* (Tex.App. 2003) 114 S.W.3d 126 (*Blue Cross*), is remarkably close to this case factually. There, the arbitration was held before an AAA arbitrator. After receiving the very same admonition sent

---

[4] Neither side questions that, if Weisbach was having a personal relationship with Baskin's sister, the existence of that relationship was required to be disclosed. Indeed, as noted earlier, this nondisclosure was the basis for a court order vacating the arbitration award, which has not been challenged.

to Weisbach by AAA in this case, the arbitrator failed to disclose his relationship with one of the lawyers.

In a case of first impression under Texas law, the appellate court held that arbitral immunity applied: "We believe that Texas public policy favors the extension of immunity to arbitrators. Independence of judgment and freedom from the threat of lawsuits initiated by dissatisfied parties are essential to the success of the arbitration process. Because Texas encourages arbitration and arbitrators are essential actors in furtherance of that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties." (*Blue Cross, supra*, 114 S.W.3d at p. 133.)

Similarly, in *L & H Airco, Inc. v. Rapistan Corp.* (Minn. 1989) 446 N.W.2d 372, an AAA arbitrator was sued for fraud, negligence and breach of contract arising out the failure to disclose his personal relationship with one of the parties. Once again, the same admonition had been sent to the proposed arbitrator by AAA as was sent to Weisbach. Not only did the arbitrator in that case have a preexisting social relationship with one of the parties, but he also went on a fishing trip with the same corporate officers between the time of notification of his appointment and when the arbitration hearing commenced several months later. (*Id.* at pp. 374–375.)

In applying arbitral immunity to these failures to disclose, the court noted that its decision to bar a separate civil lawsuit did not leave the plaintiffs without a remedy. Minnesota, like California, has a procedure by which an arbitration award tainted by the whiff of bias can be vacated by a reviewing court. Also, the civil arbitral immunity did not shield the arbitrator from criminal prosecution, if appropriate, nor from sanctions by the sponsoring entity, AAA. (*L & H Airco, Inc. v. Rapistan Corp., supra*, 446 N.W.2d at pp. 377–378.)

In *Olson v. National Assn. of Securities Dealers* (8th Cir. 1996) 85 F.3d 381 (*Olson*), the proposed arbitrator failed to disclose an ongoing business relationship with one of the parties. After the arbitration award was set aside, the other party to the arbitration sued the arbitrator and sponsoring entity for breach of contract, fraudulent misrepresentation, negligent processing of arbitration, gross negligence, breach of warranty, and intentional infliction of emotional distress. (*Id.* at p. 382.) The appellate court affirmed the trial court's dismissal of the action, concluding that all of the claims were barred by the absolute immunity for quasi-judicial acts. (*Id.* at pp. 382–383.) The dismissal included those claims made against the sponsoring organization. The court determined that the immunity extended to the organization because "[w]ithout this extension, arbitral immunity would be almost meaningless because liability would simply be shifted from individual arbitrators to the sponsoring organizations." (*Id.* at p. 383.)

Appellants generally concede that arbitrators have this absolute immunity under common law.[5] However, they maintain that the immunity does not apply in this case because (1) the disclosure of potential conflicts was to occur before the arbitrator was finally accepted by the parties and before the arbitration commenced, and therefore, it was not part of the arbitration process; (2) their claims are based on the "fraudulent solicitation of arbitration business" which is not a "function normally performed by judges"; and (3) public policy supports liability where the proposed arbitrator acts fraudulently.

■ As to appellants' argument that the arbitral immunity should not be applied because the failure to disclose occurred before the decisionmaking process began, this same contention was made by the plaintiff in *Olson, supra,* 85 F.3d 381. The court rejected the argument, concluding that "[t]he appointment of arbitrators is a necessary part of arbitration administration, however, and thus is protected by arbitral immunity." (*Id.* at p. 383.)

■ This rationale is compelling and equally applicable here. While disclosures take place before the arbitrator's appointment becomes final, and certainly before the commencement of the arbitration itself, it is an integral part of the arbitration process. Indeed, the rules and statutes governing the disclosures by arbitrators make it clear that such disclosures are to occur when the arbitrator is "proposed." Similarly, judges are expected to make the disclosures required of them before the adjudicative function of the courts begin. (Rothman, Cal. Judicial Conduct Handbook (3d ed. 2007) appen. F, pp. 4–6.) Indeed, we have been reminded recently that a judge's disqualification "occurs when the facts creating disqualification arise, not when disqualification is established. [Citations.]" (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776 [37 Cal.Rptr.3d 718].) Therefore, any claimed misconduct by the arbitrator in association with the failure to make a required disclosure at the inception of his or her selection was sufficiently associated with the arbitration process itself to justify the application of arbitral immunity.

Appellants next contend that their lawsuit is not based simply on an ethical lapse related to an arbitrator's ethical and legal duties to disclose, but on a conspiracy to commit fraud while soliciting arbitration business. They point out that because the alleged misconduct was for commercial purposes, there

---

[5] Statutory immunity for arbitrators was repealed with the expiration of Code of Civil Procedure section 1280.1. Following the repeal of section 1280.1 by its own terms, *Stasz* reaffirmed that the protection of common law quasi-judicial immunity still extended to arbitrators and sponsoring organizations. (*Stasz, supra,* 121 Cal.App.4th at p. 436.)

is no comparable judicial function, and the immunity does not apply. The sole out-of-state case they cite as support for such a claim is factually inapposite to this case. That case, *Grane v. Grane* (1986) 143 Ill.App.3d 979 [98 Ill.Dec. 91, 493 N.E.2d 1112], did not involve a failure to disclose potential grounds for disqualification. Instead, the arbitrator was sued for fraudulently inducing the parties to enter into an arbitration agreement three years before the arbitration commenced. (*Id.*, 493 N.E.2d at p. 1114.) The arbitral immunity understandably was found not to cover the charging allegations in the complaint because at the time of the alleged fraud, "defendant played the role of agent/legal representative on behalf of Hubert Grane, Sr., and certain corporate defendants. His alleged fraudulent act of inducing plaintiff and codefendant, Fred C. Grane, to enter into a binding contractual dispute resolution agreement cannot be deemed to fall within the scope of a neutral arbitrator's role." (*Id.* at p. 1117.)

In any event, the gravamen of appellants' claims against Weisbach and AAA relates to the failure to disclose a proposed arbitrator's relationship with a party that was required to be disclosed. In other contexts, similar attempts by plaintiffs to avoid an immunity or privilege by creative pleading have been rejected uniformly by courts. For example, the defendant attorney in *Rubin v. Green* (1993) 4 Cal.4th 1187 [17 Cal.Rptr.2d 828, 847 P.2d 1044], was sued by a mobilehome park owner for soliciting mobilehome owners to join a lawsuit against the owner for defects in the park. (*Id.* at p. 1191.) In an apparent attempt to avoid the bar of the litigation privilege (Civ. Code, § 47), the plaintiff owner alleged a cause of action for unfair competition. The court held that the litigation privilege applies to an attorney's " 'communicative acts of "counseling" and "advising" his clients,' " and cannot be evaded by trying to frame a derivative cause of action for violating the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). (*Rubin v. Green, supra*, 4 Cal.4th at pp. 1196, 1200–1204.) As is evident from the claims made in the out-of-state cases discussed above, similar attempts to recast the failure to disclose into other causes of action have been uniformly unsuccessful in avoiding the sting of the arbitral immunity. (*L & H Airco, Inc. v. Rapistan Corp., supra*, 446 N.W.2d 372 [claims for fraud, negligence and breach of contract dismissed]; *Olson, supra*, 85 F.3d 381 [claims for breach of contract, fraud, negligent processing of arbitration, gross negligence, breach of warranty, and intentional infliction of emotional distress dismissed]; see also *Stasz, supra*, 121 Cal.App.4th at pp. 427, 430.)

Lastly, appellants insist, albeit without citation to legal authority, that the egregious nature of the alleged misconduct takes this case outside the arbitral immunity because state public policy should favor providing a legal remedy in order to protect the sanctity of private arbitration from depravation.

We have already noted that arbitral immunity applies even where the acts alleged are malicious or corrupt. (*Howard v. Drapkin, supra,* 222 Cal.App.3d at pp. 851–852; see also *Stasz, supra,* 121 Cal.App.4th at p. 438.) Illustrative of this point, the out-of-state cases applying the doctrine of arbitral immunity to failures to disclose have dismissed claims that alleged intentional and fraudulent acts. Similarly, the United States Supreme Court has opined that as a matter of federal common law, judicial immunity applies no matter how erroneous the act, or how evil the motive. (*Stump v. Sparkman* (1978) 435 U.S. 349, 355–356 [55 L.Ed.2d 331, 98 S.Ct. 1099].)

Courts have observed that the public interest appellants seek to protect is sufficiently advanced by the remedy of vacation of the arbitration award, which constitutes the sole remedy for arbitrator misconduct. (*Stasz, supra,* 121 Cal.App.4th at pp. 427, 439–441.) Where more severe penalties may be justified, at least one court has pointed out the potential for criminal prosecution, or sanctions by the sponsoring organization. (*L & H Airco, Inc. v. Rapistan Corp., supra,* 446 N.W.2d at pp. 377–378.)[6] While perhaps imperfect, the limitations of the relief available are offset by the strong public policy reflected in the law to maintain the independence of arbitrators and sponsoring organizations. (*Thiele v. RML Realty Partners, supra,* 14 Cal.App.4th at p. 1531 ["it is reasonable to use arbitral immunity just as judicial immunity does in the judicial arena, to protect the decisionmaking process from reprisals by dissatisfied litigants"]; see also *Blue Cross, supra,* 114 S.W.3d at p. 133; *L & H Airco, Inc. v. Rapistan Corp., supra,* 446 N.W.2d at p. 377; *Austern v. Chicago Bd. Options Exchange, Inc.* (2d Cir. 1990) 898 F.2d 882, 886.)[7]

■ Accordingly, we agree with the trial court that the common law absolute immunity for quasi-judicial acts applies to the misconduct alleged in

---

[6] Because this case was decided on demurrers and based simply on the allegations of the complaint, we do not mean to imply that Weisbach does or does not deserve any sanction beyond the vacation of his award, which has already been accomplished. However, as appellants themselves point out, private arbitration is a commercial enterprise, and the pressure of the marketplace exerts its own moderating influence on the conduct of arbitrators and sponsoring organizations alike. (See *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1168 [18 Cal.Rptr.3d 142].)

[7] Also, the California State Bar Commission for the Revision of the Rules of Professional Conduct made its recommendation to the board of governors in October 2009 that the substance of American Bar Association Model Rules of Professional Conduct, rule 2.4, Lawyer Serving as Third-Party Neutral, be adopted. While the text of that proposed rule does not potentially subject a lawyer acting as an arbitrator to discipline for a failure to disclose a conflict of interest, the commission noted in its submittal that a minority of commission members are in favor of making such ethical lapses, among others, the subject of attorney discipline. (<http://ethics.calbar.ca.gov/LinkClick.aspx?fileticket=gCOnu5ytU6s%3d&tabid=2161> [as of July 15, 2010].)

the complaint, thereby precluding appellants' civil lawsuit for damages against Weisbach and AAA.

## IV.

## DISPOSITION

The judgment in favor of respondents is affirmed. Costs on appeal are awarded to respondents.

Sepulveda, J., and Rivera, J., concurred.

On August 4, 2010, the opinion was modified to read as printed above.