Filed 4/29/22  Syverson v. Reeves CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ERIK SYVERSON, | B312663 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV00592) |
| v. | |
| BARBARA REEVES et al., | ORDER MODIFYING OPINION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 25, 2022, be modified as follows:

1.  After the last paragraph on page 9, and before the first paragraph on page 10, the following paragraphs are inserted:

In his supplemental brief, Syverson contends that this case is more akin to *JAMS, Inc. v. Superior Court* (2016) 1 Cal.App.5th 984 (*JAMS 2016*) than it is to *Weisbach*.  In *JAMS 2016*, a party to a family

court matter alleged that he had agreed to hire a JAMS neutral based on representations made in the neutral's bio posted on JAMS's Web site. (*JAMS 2016*, at p. 987.) The party "later discovered the representations [on the Web site] were either untrue or misleading" and filed suit against JAMS. (*Ibid.*) Specifically, "[t]he complaint stated 'all allegations of wrongdoing relate to information [the party] specifically viewed on defendant JAMS'[s] Web site before he agreed to select' " the neutral. (*Id.* at p. 990.)

JAMS and the neutral in that case filed an anti-SLAPP motion to strike the complaint (§ 425.16). (*JAMS 2016*, *supra*, 1 Cal.App.5th at p. 987.) The trial court "found the action exempt from the anti-SLAPP procedure under the commercial speech exemption of section 425.17, subdivision (c)," and after hearing JAMS and the neutral's petition for writ of mandate, the Court of Appeal agreed. (*Ibid.*)

In *JAMS 2016*, the Court of Appeal expressly analyzed *only* whether the statements posted on JAMS's Web site were commercial speech, and expressly declined to reach whether arbitral immunity or any other doctrine might defeat claims against JAMS and the neutral on the merits. "It bears emphasizing again," the court said, "our conclusion here that [the party's] claims are the kind the Legislature intended to exempt from the scope of the anti-SLAPP statute, *separate and distinct from any evaluation of the merits of his claims, the*

2

*applicability of any defenses such as judicial immunity, or even the adequacy of the pleadings.*" (*JAMS 2016*, *supra*, 1 Cal.App.5th at p. 997, italics added.)  To put a fine point on it, the court in *JAMS 2016* stated that it was solely conducting a prong-one analysis under the anti-SLAPP statute, and that any discussion of likelihood of success on the merits would be part of a prong-two analysis:  "Again," the court said, "we do not reach the issue of whether these statements are true, false, *or otherwise nonactionable*.  Such a determination would be part of a prong-two analysis under section 425.16 regarding the merits of the claim, but is irrelevant to the commercial speech analysis required under section 425.17, subdivision (c)." (*Id.* at p. 996, italics added.)

  *JAMS 2016* is inapposite.

There is no change in the judgment.
NOT TO BE PUBLISHED

_____
CHANEY, J.  ROTHSCHILD, P. J.  CRANDALL, J.*

_____

  * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/25/22  Syverson v. Reeves CA2/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ERIK SYVERSON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BARBARA REEVES et al.,<br><br>    Defendants and Respondents. | B312663<br><br>(Los Angeles County Super. Ct. No. 20STCV00592) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Pick & Boydston, Brian D. Boydston for Plaintiff and Appellant.

Long & Levit, Joseph P. McMonigle, Jessica R. MacGregor, and Nicola M. Till for Defendants and Respondents.

_____

The trial court sustained demurrers to an original and a first amended complaint filed by Erik Syverson against Barbara Reeves and JAMS, Inc. (sometimes collectively referred to as JAMS) with leave to amend. In response to Syverson's second amended complaint, JAMS and Reeves filed demurrers that raised the arbitral immunity doctrine as a defense for the first time. The trial court sustained the demurrers to the second amended complaint without leave to amend and entered judgment.

Syverson contends that Code of Civil Procedure section 430.41, subdivision (b) prohibited JAMS from raising arbitral immunity as a basis for demurrer for the first time in response to the second amended complaint.[1] We need not determine whether Syverson's contention has merit, however, because Syverson has not demonstrated that the trial court's consideration of arbitral immunity was prejudicial. Absent prejudice, we must affirm.

## BACKGROUND

In July 2018, Raines Feldman LLP submitted a demand for arbitration to JAMS along with a statement of claims against Syverson, a former Raines Feldman partner. In the statement of claims, Raines Feldman alleged that Syverson had breached a settlement agreement that contained an arbitration clause. JAMS commenced the arbitration based on Raines Feldman's demand and statement of claims. Syverson declined to voluntarily arbitrate the matter, and Raines Feldman successfully moved the trial court for an order compelling arbitration.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

2

During the course of the arbitration, Syverson sought to disqualify the first, second, and third arbitrators JAMS appointed. According to the allegations in Syverson's second amended complaint[2] against JAMS and Reeves, after Syverson objected to the first three arbitrators, JAMS sought to appoint Reeves to arbitrate Raines Feldman's dispute with Syverson. Syverson alleges that he objected to the appointment and that JAMS overruled the objections and appointed Reeves as arbitrator in September 2018.

In her initial disclosures to the parties, dated September 18, 2018, Reeves did not disclose that she was a part owner of JAMS.

On October 22, 2019, the United States Court of Appeals for the Ninth Circuit issued its opinion in *Monster Energy Company v. City Beverages, LLC* (2019) 940 F.3d 1130, holding that "before an arbitrator is officially engaged to perform an arbitration, to ensure that the parties' acceptance of the arbitrator is informed, arbitrators must disclose their ownership interests, if any, in the arbitration organizations with whom they are affiliated in connection with the proposed arbitration, and those organizations' nontrivial business dealings with the parties to the arbitration." (*Id.* at p. 1138.) The Ninth Circuit vacated the arbitration award in that case because, it concluded, "the Arbitrator's failure to disclose his ownership interest in JAMS . . . creates a reasonable impression of bias and supports vacatur of the arbitration award." (*Ibid.*)

---

[2] The second amended complaint was the subject of the demurrers resulting in the judgment against Syverson. Consequently, unless otherwise specified, when we refer to the "complaint," we mean the second amended complaint.

On October 29, 2019, Reeves disclosed to Raines Feldman and Syverson that she is "an owner panelist of JAMS." JAMS made additional supplemental disclosures on October 30, 2019. Syverson submitted a request to disqualify Reeves as the parties' arbitrator on October 30, 2019. JAMS notified the parties by letter dated November 6, 2019 that Reeves was disqualified and that another arbitrator would be appointed. On December 2, 2019, JAMS sent the parties a letter that states, in full: "Based on Mr. Syverson's actions, complaints and threats, JAMS declines to serve as the arbitration provider in this matter. A full refund to the parties will be processed and sent under separate cover."

Syverson filed the original complaint in this matter on January 6, 2020, alleging causes of action against Reeves and JAMS for violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), "conspiracy," fraudulent concealment, false advertising (Bus. & Prof. Code, § 17500 et seq.), and unfair business practices (Bus. & Prof. Code, § 17200 et seq.). JAMS and Reeves demurred to the original complaint.

Syverson filed his first amended complaint on June 1, 2020. In it, he alleged the same causes of action as in the original complaint. Reeves and JAMS again demurred. At a hearing on September 30, 2020, the trial court sustained JAMS's demurrers and granted Syverson 15 days to file a second amended complaint—the complaint that is the subject of this appeal.

Syverson filed the second amended complaint on October 8, 2020, alleging the same five causes of action that he had alleged in the original and first amended complaints. On December 10, 2020, JAMS filed demurrers to the second amended complaint. In support of their demurrers to the second amended complaint, JAMS and Reeves argued that each of Syverson's causes of action

4

was barred by the doctrine of arbitral immunity—an argument that no party had advanced in support of demurrers to the original or first amended complaints.

The trial court heard the demurrers on January 29, 2021. The trial court concluded that each of the causes of action in the second amended complaint were barred by the arbitral immunity doctrine and sustained demurrers to the complaint without leave to amend. The trial court entered judgment for JAMS and Reeves on March 16, 2021.

Syverson filed a timely notice of appeal.

## DISCUSSION

"The standard of review governing an order sustaining a demurrer without leave to amend is long-settled. [Citation.] ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.' [Citation.] We ' "determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." ' " (*San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 276.)

"Although a general demurrer does not ordinarily reach affirmative defenses, it 'will lie where the complaint "has included allegations that *clearly* disclose some defense or bar to recovery." ' [Citations.] 'Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the

5

defense.' " (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726.)

Syverson's only contention on appeal is that the trial court was precluded from sustaining demurrers based on arbitral immunity by section 430.41, subdivision (b). That provision states: "A party demurring to a pleading that has been amended after a demurrer to an earlier version of the pleading was sustained shall not demur to any portion of the amended complaint, cross-complaint, or answer on grounds that could have been raised by demurrer to the earlier version of the complaint, cross-complaint, or answer." (§ 430.41, subd. (b).)

The parties agree that arbitral immunity was not raised as an argument in support of demurrers to the original complaint or the first amended complaint, and that the first time the demurring parties made the argument was in support of demurrers to the second amended complaint. The trial court's order on JAMS's demurrers notes as much: "While the Court would have preferred that the arbitral immunity argument was made in support of the demurrer to the First Amended Complaint, Defendants are not precluded from doing so now." The trial court appears to have reasoned, however, that JAMS's inclusion in the demurrers to each complaint of a statutory ground for a demurrer—"[t]he pleading does not state facts sufficient to constitute a cause of action"—satisfies section 430.41, subdivision (b).

Ultimately, however, if Syverson has not demonstrated that he was somehow prejudiced by the trial court's purported error, then we need not determine in the first instance whether it was error for the trial court to consider the arbitral immunity doctrine in connection with demurrers to Syverson's second

amended complaint. "[F]or over 100 years, the California Constitution has . . . expressly precluded reversal absent prejudice." (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107.)

Syverson declined to discuss the merits of the arbitral immunity doctrine in his briefing in the trial court. In his opening brief here, his entire argument was that based on section 430.41, subdivision (b), JAMS could not raise the defense for the first time in connection with demurrers to the second amended complaint because it could have been raised in demurrers to the *first* amended complaint. JAMS's brief here likewise did not discuss the merits of the arbitral immunity doctrine. Instead, JAMS argued that Syverson had forfeited any discussion about the merits of arbitral immunity both here and in the trial court, and had therefore not demonstrated prejudice on this appeal. Syverson did not file a reply brief.

Assuming without deciding that the trial court erred when it considered arbitral immunity when it was raised as an argument for the first time in demurrers to a second amended complaint, whether that error was prejudicial turns on whether arbitral immunity operates as a complete bar to Syverson's complaint. If arbitral immunity does *not* bar the complaint's causes of action, the trial court's order has obviously prejudiced Syverson. If arbitral immunity *does* apply, however, then it could have been raised later in the proceedings and *still* would have operated as a complete bar to Syverson's complaint. "A motion for judgment on the pleadings," for example, "can be filed at any time (even if a demurrer cannot)." (*Beames v. City of Visalia* (2019) 43 Cal.App.5th 741, 785.) Indeed, "[t]he court may upon its own motion grant a motion for judgment on the pleadings."

7

(§ 438, subd. (b)(2).)  Likewise, the issue could have been raised on a motion for summary judgment (§ 437c, subd. (c)) or even as late in the proceedings as a motion for directed verdict (§ 630; see *Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210).  The effect of the purported trial court error in this instance, then, is that judgment was entered *earlier* than it otherwise might have been had the issue been raised by some other procedural mechanism.

Because no party briefed the merits of the arbitral immunity doctrine in this court as it applies to this matter, we requested supplemental briefing from the parties.

" 'Arbitral immunity shields all functions which are "integrally related to the arbitral process." . . . [A]rbitrators . . . are exempt from civil liability for failure to exercise care or skill in the performance of their arbitral functions.' " (*Stasz v. Schwab* (2004) 121 Cal.App.4th 420, 431-432.)  "California courts have extended arbitral immunity to organizations that sponsor arbitrations . . . ." (*Id.* at p. 433.)

The trial court based its order on *La Serena Properties, LLC v. Weisbach* (2010) 186 Cal.App.4th 893 (*Weisbach*), concluding that it was directly on point.  *Weisbach* explained that "[i]n determining whether absolute immunity applies to the conduct of a public or private arbitrator, 'the courts look at "the nature of the duty performed [to determine] whether it is a judicial act—not the name or classification of the officer who performs it . . . ." ' " (*Id.* at p. 901.)

"Central to impartial decision-making by arbitrators and judges alike," *Weisbach* explains, "is the need for them to make disclosures that may give rise to a challenge to the judge's impartiality by one of the parties, even if the judge or arbitrator

8

concludes that he or she is not disqualified." (*Weisbach*, *supra*, 186 Cal.App.4th at p. 902.) "[A] person serving as an arbitrator pursuant to an arbitration agreement has statutory and ethical duties to comply with certain disclosure requirements." (*Ibid.*) "[T]he alleged failure to make adequate disclosures of potential conflicts of interest falls within the scope of the absolute immunity for quasi-judicial acts. Arbitrators are mandated by law to make disclosures for precisely the same reasons that judges must do so. Therefore, the process of making these disclosures is virtually identical to the ' "functions normally performed by judges." ' " (*Id.* at p. 903.)

A party's remedy for an arbitrator's or arbitration organization's failure to disclose or improper disclosures, *Weisbach* explained, is not a civil suit, but rather is vacatur of an arbitration award. (*Weisbach*, *supra*, 186 Cal.App.4th at p. 904.)

Each of Syverson's causes of action is based on the same basic set of allegations against JAMS and Reeves. Syverson alleged that both JAMS and Reeves knew that Reeves was a part owner of JAMS and that JAMS had been a repeat provider for Raines Feldman. He alleged that JAMS and Reeves omitted disclosure of those facts, which Syverson alleged were material, in initial disclosures to the parties. Syverson alleged that he would have included that information in his original objection to Reeves's appointment. And he alleged that he was damaged by having to "endure the work, cost and annoyance of participating in the arbitration between August 13, 2019 and October 29, 2019"—the point at which the information that led to Reeves's disqualification was disclosed to the parties.

*Weisbach* appears to squarely foreclose Syverson's complaint.

9

We agree with the trial court's arbitral immunity analysis. We conclude, as did the trial court, that the causes of action alleged in Syverson's second amended complaint against Reeves and JAMS are barred by the arbitral immunity doctrine. (*Weisbach*, *supra*, 186 Cal.App.4th at pp. 907-908.)

Based on our conclusion that the arbitral immunity doctrine operates as a complete defense to the causes of action in Syverson's second amended complaint, Syverson has not demonstrated that he was prejudiced by any trial court error. JAMS and Reeves would have been entitled to judgment as a matter of law whether the argument had been raised in demurrers to Syverson's original or first amended complaint, or had it been raised later in the proceedings.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.