Filed 8/8/23  McDonnell v. JAMS CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOHN P. MCDONNELL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JAMS, INC.,<br><br>        Defendant and Respondent. | A164616<br><br><br>(San Mateo County<br>Super. Ct. No. 19-CIV-06660) |

        This appeal arises from a breach of contract dispute.  Plaintiff John P. McDonnell appeals from final judgment after the trial court sustained the demurrer of defendant JAMS, Inc. (JAMS), to the second amended complaint without leave to amend.  We agree with the trial court that plaintiff failed to allege facts sufficient to state a cause of action for breach of contract and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

        On May 10, 2021, plaintiff filed the operative second amended complaint (SAC) against JAMS, alleging causes of action for breach of contract and violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.).  He sought compensatory damages, punitive damages, and attorney fees and costs.

        According to the SAC, in September 2013, plaintiff purchased a new car from Waterville, Inc., dba Antioch Nissan (Waterville).  The written sales

1

agreement signed by plaintiff and Waterville contained an arbitration clause, pursuant to which plaintiff agreed to have any claim or dispute regarding the condition of his vehicle resolved by neutral, binding arbitration rather than court action. The arbitration clause further stated: "You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.aclr.org), or any other organization to conduct the arbitration subject to our approval."

Plaintiff believed the car was defective and tried unsuccessfully to sell it back to Waterville. Ultimately, plaintiff sold the car to a third party for a loss and commenced litigation against Waterville. Thus, on or about February 17, 2015, plaintiff sent written notice to Waterville that he was requesting arbitration of the dispute regarding the defective condition of his vehicle.

After Waterville failed to respond to this notice, on or about November 9, 2015, plaintiff filed a demand for arbitration with JAMS. Plaintiff did not, as required by the arbitration clause, seek Waterville's approval to have JAMS conduct the arbitration. Plaintiff's arbitration demand was served on Waterville on November 12, 2015.

On or about December 8, 2015, JAMS notified plaintiff that JAMS had initiated an arbitration case with assigned case No. 1100082863. About a week later, a JAMS senior case manager notified plaintiff and Waterville that the arbitration would be subject to JAMS standards and rules.

On December 18, 2015, JAMS demanded payment of an initial nonrefundable fee of $1,200. Both JAMS and plaintiff thereafter attempted to obtain this payment from Waterville but were not successful.

On or about April 27, 2016, the JAMS senior case manager advised plaintiff that JAMS had not heard from Waterville and asked how he wished

2

to proceed.  Plaintiff replied by email on or about May 10, 2016, asking whether and how he could pay the fee and obtain a default against Waterville.  On May 11, 2016, the senior case manager responded that if plaintiff paid the $1,200 fee, JAMS would commence the arbitration and initiate the process to select an arbitrator, and once the arbitrator was selected, the arbitrator would set a date for a hearing.  If plaintiff did not pay the fee, JAMS would close the case file.

Accordingly, on or about June 17, 2016, plaintiff paid JAMS the $1,200 fee.  A week later, on June 24, 2016, JAMS sent plaintiff and Waterville an arbitration commencement letter that included a list of five potential arbitrators and requested that each party strike one proposed arbitrator.  On or about June 29, 2016, plaintiff responded to the commencement letter and struck one of the proposed arbitrators.  Waterville, however, never responded to this letter.

Despite further requests by plaintiff, JAMS never appointed an arbitrator or scheduled a hearing in the case.  Finally, in September 2018, plaintiff sent JAMS a written demand that JAMS follow its rules and schedule the arbitration hearing.  Instead, on October 1, 2018, JAMS notified plaintiff that it had " 'closed the file,' " as JAMS was "unable to get agreement from [Waterville] to proceed . . . ."  This was followed by a January 8, 2019, letter from a JAMS attorney stating that JAMS would not proceed with the arbitration, as Waterville did not agree to it as an arbitral forum.  JAMS also refunded the $1,200 fee paid by plaintiff to commence arbitration.  Plaintiff never cashed this refund check.

On November 18, 2019, plaintiff initiated this lawsuit against JAMS.

On June 11, 2021, JAMS demurred[1] to the SAC on the grounds that plaintiff failed to state facts sufficient to constitute a valid cause of action. Following a hearing, the trial court sustained this demurrer without leave to amend, ruling that (1) JAMS lacked authority to arbitrate plaintiff's dispute with Waterville because there was no enforceable agreement to arbitrate at JAMS and (2) the doctrine of arbitral immunity barred both causes of action.

On December 8, 2021, judgment was entered in favor of JAMS, prompting this timely appeal.

## DISCUSSION

Plaintiff challenges the trial court's decision to sustain JAMS's demurrer without leave to amend.[2] We review this decision de novo, applying the same principles as the trial court. (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315.)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable

---

[1] The trial court sustained JAMS's demurrer to the first amended complaint with leave to amend, prompting the filing of the operative SAC.

[2] Plaintiff challenges the trial court's order only as to his cause of action for breach of contract. We thus consider forfeited any appellate challenge to the court's decision to sustain the demurrer without leave to amend as to his cause of action for violation of the Consumers Legal Remedies Act.

4

possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Plaintiff theorizes in the SAC that once he paid JAMS the $1,200 filing fee, a written agreement was formed obligating JAMS to provide arbitration under its consumer arbitration rules and policy (hereinafter, JAMS rules). Plaintiff further theorizes that because Waterville failed to answer or respond to his demand for arbitration with JAMS, JAMS had a duty under its rules to appoint an arbitrator and set up a hearing to resolve the dispute without Waterville, similar to a hearing on entry of default in civil court. JAMS breached their agreement, plaintiff alleges, by failing to set this hearing and enter an arbitration award in his favor. For reasons that follow, plaintiff's theory is fatally flawed from the start.

Arbitration is a " 'creature of contract' " wherein the parties to a transaction bargain for terms and provisions contained in the arbitration clause. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1460.) Thus, while there is a presumption in favor of arbitration, the parties will not be required to arbitrate where they have not agreed to do so. (*Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 330–331 (*Brinkley*).)

Here, the SAC incorporates in its entirety the arbitration clause from plaintiff and Waterville's written sales agreement. Per this agreement, as stated in the SAC, " 'all claims and disputes' " between the seller (Waterville)

and buyer (plaintiff) shall be resolved by neutral, binding arbitration.[3]  To this end, the buyer (plaintiff) "may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.aclr.org), or any other organization to conduct the arbitration subject to our approval."

Whether plaintiff alleged facts sufficient to state a valid cause of action for breach of contract against JAMS depends on the language of this arbitration clause.  " 'Our Supreme Court long ago established "[t]he interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect.  [Citations.]' " (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1444 (*Morrow*); *Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1091 [" '[t]he rule on demurrer is simply a variation on the well-recognized theme that "[i]t is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence" ' "].)  Under the generally accepted canons of interpretation, we " 'give effect to the parties' mutual intent at the time of contracting' " and interpret the words of the instrument (here, the arbitration clause) according to their " ' "ordinary

---

[3] The arbitration clause provides in relevant part:  "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your . . . purchase or condition of this vehicle . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . .  You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.aclr.org), or any other organization to conduct the arbitration subject to our approval."

and popular" ' " meaning.  (*Avalon Pacific–Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC* (2011) 192 Cal.App.4th 1183, 1198, fn. 3; *Allen v. Superior Court* (2003) 111 Cal.App.4th 217, 224 ["arbitration provisions . . . are to be construed in accordance with their plain meaning"].)

These rules are easily applied in this case.  The arbitration clause, read straightforwardly, required plaintiff and Waterville, as an integral part of the written sales contract, to submit any and all claims or disputes to designated arbitral forums.  These forums were "the American Arbitration Association . . . or any other organization to conduct the arbitration subject to our approval."

As alleged in the SAC, Waterville never approved JAMS to arbitrate their dispute.  Nor was Waterville required to.  (*Allen v. Superior Court, supra*, 111 Cal.App.4th at p. 228 [" '[A]n agreement to arbitrate before a particular forum is as integral a term of a contract as any other, which courts must enforce' "]; *Brinkley, supra*, 242 Cal.App.4th at p. 331 [" ' "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" ' "].)  As such, JAMS was not authorized under the arbitration clause to appoint an arbitrator to decide plaintiff's claims against Waterville, notwithstanding Waterville's failure to respond to plaintiff's demand for arbitration with JAMS.  Moreover, lacking any authority under the arbitration clause, JAMS acted properly in declining to appoint an arbitrator and proceed with a hearing on plaintiff's claims.  California law is clear that because arbitrators "derive their powers from the parties' voluntary submission of disputes for resolution in a nonjudicial forum" (*Brinkley*, at p. 326), an arbitrator exceeds his or her powers by " 'act[ing] in a manner not authorized by the contract or by law' " (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056).

7

The JAMS rules are in accord. JAMS rules, rule 1(a), states: "The JAMS Streamlined Arbitration Rules and Procedures ('Rules') govern binding Arbitrations of *disputes or claims that are administered by JAMS and* in which the Parties agree to use these Rules *or*, in the absence of such agreement, no disputed claim or counterclaim exceeds $250,000 . . . ." (Italics added.) Plaintiff focuses on the latter part of this rule to argue that the JAMS rules govern his claims notwithstanding Waterville's failure to agree to his arbitration demand because his claims do not exceed $250,000. In doing so, he disregards the initial language of JAMS rules, rule 1(a), which states the JAMS rules govern binding arbitrations of disputes or claims administered by JAMS. As explained *ante*, per the arbitration clause agreed to by plaintiff, his claim is not one subject to administration by JAMS but by the American Arbitration Association or another organization approved by Waterville.

Further, as the SAC acknowledges: "The JAMS arbitration rules provide in Rule 5(c) that *if a party that is obligated to arbitrate pursuant to a written contract* fails to participate, then pursuant to JAMS Rule 14, 'the Arbitrator shall schedule, and provide appropriate notice of, a hearing, or other opportunity for the party demanding the Arbitration to demonstrate its entitlement to relief.' JAMS Rule 14 provides that, if a party has failed to participate in the Arbitration process, the Arbitrator may set the hearing without consulting with that non-participating party." (Italics added.) Here, for the reasons stated *ante*, Waterville was not obligated under the arbitration clause to arbitrate a dispute with a buyer before JAMS. As such, the provision under JAMS rules, rule 14, requiring the JAMS arbitrator to set a hearing without consulting with Waterville, was never triggered.

8

Under these circumstances, we conclude as a matter of law JAMS had no authority, much less a contractual duty, to arbitrate plaintiff's dispute with Waterville. The arbitration clause does not state, nor does the SAC allege, that a buyer such as plaintiff may require Waterville, the seller, to arbitrate a claim or dispute before JAMS. Accordingly, we agree with the trial court the SAC fails to state facts sufficient to constitute a cause of action because it conclusively appears JAMS did not breach the terms of an enforceable agreement to arbitrate plaintiff's dispute.

Alternatively, we conclude the trial court properly sustained JAMS's demurrer to the SAC on the independent ground of arbitral immunity. California common law arbitral immunity protects both arbitrators and the organizations that sponsor arbitrations, such as JAMS, from civil liability for conduct in their quasi-judicial capacity. (*Morgan Phillips, Inc. v. JAMS/Endispute, LLC* (2006) 140 Cal.App.4th 795, 800; *American Arbitration Assn. v. Superior Court* (1992) 8 Cal.App.4th 1131, 1134.) "The purpose of arbitral immunity is to encourage fair and independent decisionmaking by immunizing arbitrators from lawsuits arising from conduct in their decisionmaking role. [Citations.] Thus, generally speaking, arbitral immunity 'shields all functions which are "integrally related to the arbitral process." [Citations.]' " (*Morgan Phillips, Inc. v. JAMS/Endispute, LLC*, at pp. 800–801.)

Here, plaintiff alleges JAMS breached an agreement to conduct arbitration when, after sending out an arbitration commencement letter on June 24, 2016, it refused to (1) appoint an arbitrator, (2) schedule an arbitration hearing to consider his claims against Waterville, or (3) enter an award in his favor based on Waterville's failure to respond to his arbitration demand. However, these alleged actions or refusals to act by JAMS were

9

"sufficiently associated with the adjudicative phase of the arbitration to justify [arbitral] immunity." (*Thiele v. RML Realty Partners* (1993) 14 Cal.App.4th 1526, 1530 [the organization's administrative act of sending out the arbitral award contrary to a party's express instructions was shielded from liability by arbitral immunity]; *La Serena Properties, LLC v. Weisbach* (2010) 186 Cal.App.4th 893, 901–902 [arbitral immunity shielded the sponsoring organization from liability for breach of contract for its alleged failure to appoint a neutral arbitrator].) As such, the trial court's arbitral immunity finding was correct.

Finally, plaintiff has presented us with no facts that demonstrate a reasonable possibility that the defects identified *ante* could be cured by amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) Accordingly, the demurrer to the SAC was properly sustained on two separate grounds. Judgment in favor of JAMS thus stands.[4]

## DISPOSITION

The judgment is affirmed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Burns, J.

A164616/*McDonnell v. JAMS, Inc.*

[4] JAMS's request for judicial notice filed on October 24, 2022, is denied as moot.

10